UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MANDY ELLINGWOOD BROOKS,  )
                          )
        Plaintiff         )
                          )
v.                        )  No. 2:16-cv-00553-NT
                          )
NANCY A. BERRYHILL,       )
Acting Commissioner of Social Security, )
                          )
        Defendant         )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy through her date last insured for SSD benefits, December 31, 2011. The plaintiff seeks remand on the bases that the ALJ failed to resolve evidentiary conflicts generated by the testimony of medical expert Leonard M. Rubin, M.D., ignored the opinion of agency examining consultant Ian F. M. Buchan, PA-C, and failed to explain how he considered her obesity, back pain, and depression in combination. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 14) at 1-9. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, Finding 1, Record at 12; that, through her date last insured, she had a severe impairment of obesity, Finding 3, *id*.; that, through her date last insured, she had no impairment or combination of impairments that met or medically equaled the severity of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 4, *id*. at 13; that, through her date last insured, she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could stand and/or walk for at least two hours in an eight-hour workday, sit, with normal breaks, for six hours in an eight-hour workday, never climb ladders, ropes, or scaffolds or kneel, crouch, or crawl, occasionally climb ramps and stairs, balance, and stoop, had to avoid hazardous machinery and unprotected heights, could carry out short, simple instructions and maintain concentration, persistence, and pace over two-hour blocks of time during a normal workday/week, could occasionally interact with supervisors, and could adapt to changes in the workplace, Finding 5, *id*. at 14; that, through her date last insured, considering her age (33 years old, defined as a younger individual, on her date last insured), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 15-16; and that she, therefore, had not been disabled at any time from November 23, 2011, her alleged onset date of disability, through December 31, 2011, her date last insured, Finding 11, *id*. at 17.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

## I. Discussion

### A. Asserted Failure To Resolve Evidentiary Conflicts

At hearing, Dr. Rubin testified that the plaintiff had medically determinable physical impairments of morbid obesity, degenerative disc disease ("DDD") of the lumbar spine, obstructive sleep apnea, irritable bowel syndrome ("IBS"), and probably Celiac disease. *See*

Record at 69-70. The ALJ inquired whether Dr. Rubin thought the plaintiff's DDD was severe. He testified:

> There is some conflicting evidence about that, Your Honor. In Exhibit 17-F [the report of agency examining consultant Russell Shipman, D.O.] in 2006[2] there was a reference to weakness of the left lower extremity and migratory, and has since decreased in both lower extremities. And in November of 2011 in Exhibit 27-F [the report of an examination by William S. Sutherland, M.D.] he specifically said there's no spinal stenosis, or a specific [r]adiculopathy, or sciatica, so I'm not sure who to believe, although, of course, the two comments in the two exams are separated by five years, so things might have changed in that period of time.

*Id*. at 70, 728-33, 1098-99. The ALJ then asked, "So that would be a non-severe impairment[] as of at least up to 12/31/11?" *Id*. at 70. Dr. Rubin replied, "Correct." *Id*.

The ALJ inquired whether any of the plaintiff's impairments met the criteria of the Listings during the period from November 23, 2011, through December 31, 2011. *See id*. at 72-73. Dr. Rubin testified that Listing 1.04(A) was not met, citing Exhibit 29-F, Dr. Sutherland's report interpreting lumbar spine imaging performed on November 23, 2011. *See id*. at 73, 1108; Listing 1.04(A).[3] However, he testified that Listing 1.04(A) was equaled on or before December 31, 2011. *See id*. at 73-74. He explained:

> You see in 2006, Your Honor, . . . she seems to meet the listing according to the Exhibit 7-F, but then Dr. Sutherland's note in 27-F is, I believe, dated 11/23/11, and he calls attention to the fact that there is no spinal stenosis, et cetera, et cetera, which I already testified to, so it's hard for me to judge that issue when Your Honor will have to make that decision.

*Id*. at 74. The following colloquy between the ALJ and Dr. Rubin ensued:

---

[2] The reference to "Exhibit 17-F" evidently is a typographical error. The report to which Dr. Rubin referred is Exhibit 7F – B7F, to be precise. *See* Record at 728-33.

[3] Listing 1.04 pertains to disorders of the spine. *See* Listing 1.04. To meet that listing, a claimant's impairment must satisfy the criteria of subsections (A), (B), or (C). *See id*. To meet Listing 1.04(A), a claimant must demonstrate "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" *Id*.

4

> Q. Well, if Dr. Sutherland's note that you just cited is correct, would she equal [L]isting 12.04?[4]
>
> A. I don't believe so, Your Honor.
>
> Q. Okay. Well, Dr. Sutherland is her treating doctor. He's seen her a lot more than once.
>
> A. You're right.
>
> Q. And I will accept – I will rely on Dr. Sutherland's note of that time, and I will find that she does not equal 1.04, and I will ask you to continue with the physical residual functional capacity statement[.]

*Id*.

In his decision, the ALJ found that the plaintiff had no impairment or combination of impairments that met or medically equaled the criteria of any of the Listings, providing the following brief explanation: "The [plaintiff] has not alleged, nor does the evidence show that her impairments were of listing-level severity as of the date last insured." *Id*. at 13 (citation omitted).

In discussing the weight given to expert opinions, he explained, in relevant part, that he gave "some weight" to the opinions of agency nonexamining consultants as well as those of the medical experts who testified at hearing (Dr. Rubin and James Claiborn, Ph.D.), "none of whom asserted that the [plaintiff] was unable to work, or had a lesser functional capacity than described above, as of December 31, 2011." *Id*. at 15. He stated that he gave little weight to a "somewhat confusing" August 20, 2012, assessment of Peter Fifield, a mental health clinician who first saw the plaintiff in 2008, and to a July 31, 2015, opinion of Peter Cook, M.D., who began treating the plaintiff in March 2013, articulating reasons for that assignment of weight as to each. *Id*.

---

[4] The parties agree that the reference to "12.04" was either a misstatement by the ALJ or a typographical error, and that the ALJ referred, or meant to refer, to Listing "1.04." Statement of Errors at 4 n.1; Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 4 n.2.

The plaintiff seeks remand on the basis that the ALJ failed to resolve Dr. Rubin's "illogical and conflicting" testimony first that her back condition was nonsevere, then that it equaled Listing 1.04(A) prior to December 31, 2011, and then that it met Listing 1.04(A) in 2006. *See* Statement of Errors at 4. She complains that the ALJ failed to address, either at hearing or in his decision, Dr. Rubin's opinion that Listing 1.04(A) was met in 2006 or explain why he relied on the Sutherland report over the opinions of two other doctors who "saw the totality of the evidence and in the instance of Dr. Cook, regularly treated Plaintiff." *Id*. at 4-5.[5] She asserts that "[t]he ALJ was obligated to explain how Dr. Rubin's opinion that Plaintiff met a Listing in 2006, but not in 2011[,] was substantiated given the worsening of [her] condition." *Id*. at 6.

As the commissioner rejoins, *see* Opposition at 4-6, Dr. Rubin explained any seeming conflict in his testimony, and the ALJ explained how he resolved the underlying evidentiary conflict noted by Dr. Rubin. Dr. Rubin made clear that the April 15, 2006, report of Dr. Shipman supported a finding that the plaintiff met or equaled Listing 1.04(A), but the November 23, 2011, report of Dr. Sutherland did not. *See* Record at 72-74. The ALJ, in turn, chose to credit Dr. Rubin's conclusion based on the Sutherland report for two sound reasons: that, whereas Dr. Shipman was a one-time examining consultant, Dr. Sutherland was the plaintiff's treating physician, and whereas the Shipman opinion predated the relevant time period by five years, the Sutherland findings were made during that period. *See id*. at 74.[6]

To the extent that the plaintiff argues that the ALJ was obliged to explain how Dr. Rubin's opinion that she met a listing in 2006 but not in 2011 was substantiated given the worsening of her

---

[5] Presumably, the second doctor to whom the plaintiff refers is Dr. Shipman.
[6] The plaintiff makes passing references to the ALJ's rejection of the July 31, 2015, opinion of Dr. Cook and the August 20, 2012, opinion of Fifield. *See* Statement of Errors at 2, 5, 7-8; Record at 15, 1100-06, 2283-87. As the commissioner contends, *see* Opposition at 9-10 n.8 & 11 n.9, and the plaintiff's counsel did not contest at oral argument, any challenge to the weight assigned to the Cook and Fifield opinions is sufficiently undeveloped as to be waived, *see, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

6

condition, she relies on her subjective reports to treating sources that her condition worsened and a comparison of findings of a July 13, 2005, full-spine radiographic report with the November 23, 2011, lumbar-spine imaging report on which Dr. Rubin relied. *See* Statement of Errors at 6; Record at 723, 1108. She emphasizes that the x-ray comparison reveals that she had developed spinal osteophyte formations as of the later date. *See* Statement of Errors at 6. Yet, as the commissioner rejoins, *see* Opposition at 6, the plaintiff's development of osteophyte formations does not demonstrate that, as of the relevant period, her condition met or equaled the criteria of Listing 1.04(A). Indeed, Dr. Rubin mentioned the finding of osteophyte formations in concluding that the listing was not met as of that period. *See* Record at 73.

### B. Challenge to Handling of Buchan Opinion

The plaintiff next seeks remand, contending that the ALJ impermissibly ignored Buchan's opinion. *See* Statement of Errors at 7-9. Following a May 20, 2011, examination of the plaintiff, Buchan summarized:

> The [plaintiff] demonstrated no difficulty sitting, standing or walking although she claims she has difficulty sitting and standing and walking for any length of time. She would have difficulty lifting and carrying objects because of her subjective complaints of chronic low back pain. She will also have difficulty bending because of complaints of back pain and her morbid obesity. She should have no difficulty handling objects. She demonstrated no difficulty hearing and speaking.
>
> . . . It would be important to get any MRI studies to provide objective evidence to document her subjective complaints of back pain.
>
> The [plaintiff's] morbid obesity more than likely plays a significant role in her depression and her complaints of chronic back pain. An aggressive weight loss program would probably alleviate some of these issues.

*Id*. at 829-30.

The ALJ did not discuss the Buchan opinion in the section of his decision weighing the opinion evidence. *See id*. at 15. The plaintiff argues that this was a material error, contributing to the ALJ's asserted failure to consider the impact of her impairments in combination. *See* Statement

7

of Errors at 7-9. She asserts that Buchan's opinion was consistent with that of Fifield that her "diagnosis of depression co[-]occurring [with] obesity disallows her to function [at] a normal level" and that her "depression [and] anxiety directly relate to her obesity thus [a]ffecting her physical symptoms and level of pain." *Id*. at 7-8; Record at 1104. Yet, she complains, the ALJ "named this statement as a rationale for issuing little weight to the opinion of Mr. Fifield." *Id*. at 8.[7]

Buchan, a physician's assistant, is not an "acceptable medical source" for purposes of establishing the existence of a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a). However, "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) . . ., [the commissioner] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Id.* § 404.1513(d).

SSR 06-03p provides, in relevant part:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 331.

---

[7] As the commissioner points out, *see* Opposition at 11 n.9, this is not a fair characterization of the ALJ's rationale for discounting the Fifield opinion. The ALJ explained that he gave little weight to Fifield's opinion that the plaintiff would miss more than three days of work per month due to her mental symptoms, which were "'directly related'" to her obesity, on the bases that Fifield "also state[d] that [her] depression responded to medication and therapy to the point where it was mild or in remission," "estimate[d] her global functioning level to be 70, which denotes mild symptoms and/or impairment[,]" and "assert[ed] that the limitations he endorse[d] were present as of February 15, 2010, which precede[d] the alleged onset date." Record at 15.

8

As the commissioner argues, *see* Opposition at 9, while Buchan stated that the plaintiff's morbid obesity more than likely played a significant role in her depression and complaints of chronic back pain, he did not translate these difficulties into specific limitations, at most suggesting that she had difficulty lifting, carrying, and bending, *see* Record at 829. Thus, Buchan did not offer an RFC opinion for the ALJ to consider.

In any event, as the commissioner contends, *see* Opposition at 9, any error in failing to address the Buchan opinion is harmless. First, the ALJ relied in part on the opinions of four experts who took the Buchan opinion into consideration: Dr. Rubin and agency nonexamining consultants Nalini Tella, M.D., Donald Trumbull, M.D., and Benjamin Weinberg, M.D. *See* Record at 15, 68, 130, 133-34, 156-57, 160-61, 168, 172-73. In similar circumstances, this court has deemed remand unwarranted. *See, e.g., Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, *9 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *appeal filed*, Case No. 17-1889 (1st Cir. Sept. 5, 2017) (claimant not entitled to remand on basis of ALJ's failure to explain weight given to agency examining consultant's findings when ALJ relied on opinions of two agency nonexamining consultants who had considered those findings). Second, for the reasons discussed below, the ALJ did not fail to consider the plaintiff's impairments in combination.

### C. Asserted Failure To Consider Impairments in Combination

The plaintiff finally seeks remand on the basis that the ALJ failed to consider the combined effects of her severe obesity impairment and nonsevere impairments of back pain and depression. *See* Statement of Errors at 8-9; *see also* 20 C.F.R. § 404.1523 (in determining whether a claimant has a severe impairment or combination of impairments, and at other steps of the sequential evaluation process, commissioner "will consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

9

She points not only to the ALJ's asserted mishandling of the Buchan and Fifield opinions but also to his prevention of Dr. Rubin from answering a question posed by her counsel at hearing regarding whether her impairments in combination met a listing. *See* Statement of Errors at 8-9. Her counsel asked Dr. Rubin:

> Where the Social Security [R]uling [02-1p] talks about where obesity is involved, you could actually perhaps find that a claimant equaled a listing such as 1.02(a), or 1.04 if you look at obesity as a factor as well, because you seem to indicate that you felt perhaps she did equal a listing around that period of time, but then, I guess, not. So in taking into account her obesity in relation to the other issues that she was dealing with at that time, you don't feel that she would equal a listing if you considered all of the issues, the IBS, the degenerative disc disease, the headaches, so forth and so on?

Record at 81-82. The ALJ then stated:

> Counselor, [L]isting . . . 1.04 first are physical problems, and I don't see anyplace in the record where there are specific problems related only to obesity, and also 1.04 is a [m]usculoskeletal problem, and you're trying to throw in all the rest of this lady's problems into that pot, and it would be different if she had two or three other listings, musculoskeletal listings that were in play, but there isn't. There is only one, and Dr. Rubin opined that based on her own doctor's review of the record that it didn't meet – didn't equal 1.04.

*Id.* at 82.

The plaintiff contends that the ALJ erred in precluding Dr. Rubin's response on this basis because a claimant's combined impairments properly are considered in determining whether they equal the criteria of a listing. *See* Statement of Errors at 8-9; 20 C.F.R. § 404.1526(b)(3) ("If you have a combination of impairments, no one of which meets a listing . . ., we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.").

However, even assuming that the ALJ erred in this respect, the plaintiff fails to show reversible error. Dr. Rubin had already testified that her impairments did not equal Listing 1.04(A)

10

during the relevant period, *see* Record at 73-74, and no agency nonexamining consultant indicated that her impairments equaled, or for that matter met, the criteria of any listing, *see id*. at 131-34 (Dr. Tella), 158, 161 (Dr. Trumbull), 169, 172 (Dr. Weinberg).

Finally, and more broadly, the ALJ did not ignore the combined effects of the plaintiff's impairments. As the commissioner points out, *see* Opposition at 10, the ALJ stated that his RFC assessment "include[d] the effect of obesity on [the plaintiff's] nonsevere impairments[,]" Record at 13.[8] After explaining that he found her allegations regarding her symptoms not entirely credible, *see id*. at 14-15, he proceeded to assess both physical and mental limitations reflecting the impact of severe and nonsevere impairments, *see* Finding 5, *id*. at 14, taking into account the opinions of experts who had considered combinations of those impairments.[9] He, therefore, adequately considered the plaintiff's combination of severe and nonsevere impairments. *See, e.g., Lewis v. Barnhart*, No. 04-62-B-W, 2004 WL 2677211, at *4 (D. Me. Nov. 24, 2004) (rec. dec., *aff'd* Dec. 14, 2004) (ALJ properly considered cumulative effect of claimant's impairments when he discussed each and made findings concerning the symptoms alleged to result from them).

The plaintiff falls short of demonstrating entitlement to remand on this basis, as well.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for***

---

[8] In that context, the ALJ cited Buchan's report, stating: "The report of a consultative examination done in May 2011 indicates that morbid obesity likely played a significant role in [the plaintiff's] depression and back pain (Exhibit B11F)." Record at 13, 826-30.

[9] For example, as the commissioner observes, *see* Opposition at 12-13, Dr. Rubin factored in the plaintiff's DDD and morbid obesity, *see* Record at 75-78, and Dr. Claiborn factored in her major depressive disorder and anxiety, *see id*. at 86-91.

11

*which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 17th day of September, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge